Mr. Justice Wylie
delivered the opinion of the court:
Malone, the defendant, was both executor and devisee under the will of his father. There was no personal estate except a very small amount, and the whole of the testator’s real estate was given to him by the will.
The plaintiff brought an action at law against him, as executor, to recover the amount of a debt which she claimed to be due her upon a certain paper, which she set up as having been signed by the testator a short time prior to his death. *241 The defendant appeared to the action, and on the trial attempted to show that this paper was a forgery; but the verdict was against him for the amount claimed.
No further proceedings were had in the action, nor was a judgment of any kind ever entered in pursuance of the verdict, for the reason, doubtless, that it was manifest there were no personal assets in the hands of the executor to be reached by such proceedings. The plaintiff having thus obtained a verdict at law against the defendant as executor, subsequently filed the present bill in equity against him in his character of devisee, with a view to subject the real .estate to the payment of this debt.
In this suit defendant pleaded the statute of limitations, and disputed also the validity, of the complainant’s claim. The latter relied mainly on the effect of the verdict, claiming that it -was conclusive. The coui’t below held that the verdict was not conclusive, and for other reasons dismissed the bill.
Unless that verdict was conclusive, we think the decree below should be affirmed; for a great preponderance of evidence is against the validity of the claim, and before the institution of this suit it was barred by the statute of limitations.
In Ingle v. Jones, 9 Wall., 495, the court say: “It is insisted by the counsel for the appellants that the judgment is erroneous in form, and is iu fact only interlocutory. This objection is well taken. According to the statutes of Maryland, which are in force in the county of Washington, the judgment, under the circumstances, should have been entered only for assets as they should thereafter come into the hands of the administrator. But this fact is immaterial. The case is governed by the local law. That law makes the proceeding against the administrator and the heir, when the latter proceeding is necessary, entirely independent of each other. The duties of the administrators are confined to the personal estate, and never beyond it. If that be insufficient to discharge the debts, and it be necessary to resort to the realty of the deceased for that purpose, a proceeding against the *242 heir must be instituted. In that event, whatever has been done by the administrator is without effect as to the property sought to be charged. A judgment against the administrator is not evidence against the heir. The demand must be proved iu all respects as if there had been no prior proceeding to effect its collection, and the statute of limitations may be pleaded with the same effect as if there had been no prior recover}’ against - the personal representative.” (Stats. of Md., 1786, 1798; Collinson v. Owens et al., 6 G. & J., 4; 8 Pet., 528.)
In this opinion the court refers to the local law under the statutes of Marylaud for the grounds of its decision in that case, without quoting its language. But since, in the present suit, the defendant bears the duplex character of executor and of devisee, and in the action at law' had the opportunity of defending against the claim of the plaintiff, and did make such defense, it is important to ascertain from the statutes exactly the effect of a verdict against the personal representative.
By the act of 1798, ch. 101, sub-ch. 8, sec. 7, it is enacted that “in no action brought against an executor or administrator shall it be necessary for him to plead plene administravit, or anything relative to the assets, or for the plaintiff or plaintiffs to reply to such plea.” The next section following is in these words: “And if the verdict of the jury on the.issue joined he against the executor or administrator, or if he shall be willing to confess judgment, and the debt or damages which the deceased (if he or she were alive) ought to pay be ascertained by verdict or confession, or otherwise, the court before whom the action was brought shall thereupon assess the sum -which the executor or administrator ought to pay, regard being had to the amount of assets in his hands and the debts due to other persons; and if it shall appear to the said court that there are assets to discharge all just claims against the deceased, the judgment shall be for the whole debt or damages found by the jury, or confessed, or otherwise ascertained, and costs; and if it shall appear to the court *243 that there are not assets to discharge all sueli just claims, the judgment shall be for such sum only as bears a just proportion to the amount of the debt, or damages and costs, regard being had to the amount of all the just claims and of the assets; that is to say, as the amount of all the said claims shall he to the assets, so shall be the amount of the said debt or damages and costs be to the sum required, for which judgment shall be given.”
Section 9 proceeds to provide the instrumentalities and direct the methods by 'which the objects of the preceding section are to be carried into effect.
The object, therefore, of an action at law against an executor or administrator, in this District, is to reach the personal estate in his hands, and the subject-matter of such an action is the personal 'assets. If the personal estate be sufficient to pay all debts, the plaintiff may have a judgment for the whole amount of his claim, and a fieri facias may be issued and levied upon the personal property of either the deceased or of the executor. If the persoual estate be insufficient to pay all the debts, then the judgment will not be for the whole amount of the verdict, but only for a proportional part. If it appear to the court that there is no personal estate whatever, then there can be no judgment for any amount, and that -was the case in the present instance. There was no judgment on the verdict, and, under the circumstauees, there could be no judgment. And a verdict alone, -without a judgment, can never be set up as res adjudícala in a subsequent suit.
Besides this, in Aspden v. Nixon, 4 How., 407, the Supreme Court of the United States held, in accordance with the view taken by the vice-chancellor in Burrs v. Jackson, that to render a former adjudication conclusive, it must be for the same matter, between the same parties, aud for the same purpose. This opinion was cited and recognized in Washington Steam-Packet Company v. Sickles, 24 How., 383.
Other authorities can be found which apply the doctrine of *244 estoppel with greater latitudejhan this, but this court is bound absolutely by the decisions of its own superior.
The decision in Corcoran v. Chesapeake and Ohio Canal Company, 4 Otto, 741, has been pressed and relied on as a later and contrary decision upon this subject. Mr. Corcoran was trustee, named in a deed of trust from the Chesapeake and Ohio Canal Company to secure a large amount of bonds which had been issued by the company. He was also a holder of many of the bonds in his own right. He brought suit in this court, on behalf of himself and others in like situation, to recover arrears of interest which he claimed to be due on these bonds. The same matter had been decided by the Court of Appeals of Maryland in a suit in which he was made a party defendant, in his capacity of trustee, and the decision was against him there. This adverse decision was pleaded by the company in answer to his bill in this court, and it was held by the Supreme Court, that the decision in Maryland was conclusive against him here, notwithstanding he was now suing in his individual capacity and the Maryland decision was against him in his capacity of trustee.
But the difference between that case and the one we are now considering is this, and it is fundamental: that in Mr. Corcoran’s case the subject-matter of the controversy was the same in both suits, viz., the interest coupons of the company’s bonds; in the present case, the subject-matter of the action at law was the personal estate of the testator, and the subject-matter of the suit in equity is the real estate of the debtor.
The reason assigned for holding the Mai’yland decree conclusive is stated with great force and clearness by Mr. Justice Miller, as follows:
“ It would be a new and very dangerous doctrine in the equity practice to hold that the cestui que trust is not bound by the decree against his trustee in the very matter of the trust for which he was appointed. If Corcoran owned any of these bonds and coupons then, he is bound because he was representing himself. If he has bought them since, he is bound *245 as privy to the person who was represented. (Kerrison v. Stewart, 98 U. S., 155.)”
In the present case the defendant is not bound as to the real estate by the verdict in the action at law, because in that action he represented only the personal estate, but in this the real estate is the subject-matter of the controversy.
Decree below affirmed.